IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ZEESHAN SYED, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 3:17-cv-1019 |
| ) | Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM**

The movant, Zeeshan Syed, a federal prisoner presently housed at FCI Oakdale II in Oakdale, Louisiana, brings this action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence imposed by another judge of this court on December 4, 2015. (Crim. Case. No. 3:11-cr-0083(1), ECF Nos. 1062, 1137).[1] Judgment was entered on December 7, 2015. (ECF No. 1064.) On July 10, 2017, the movant filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion") raising claims for ineffective assistance of counsel. (ECF No. 1.) The respondent filed an opposition to the movant's Motion (ECF No. 9), and the movant filed a reply (ECF No. 17.). For the reasons set forth herein, the court finds that an evidentiary hearing is not required and that the record establishes that the movant is not entitled to relief.

**I.     BACKGROUND**

On April 20, 2011, the movant was indicted and charged with one count of violation of 21 U.S.C. § 846, conspiracy to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana. (ECF No. 45-1.) On October 31, 2012, a superseding indictment was filed,

---
[1] All citations are to the record in Case No. 3:11-cr-0083(1), unless otherwise noted.

charging the movant with the conspiracy count (Count One) and one count of violation of 18 U.S.C. § 1956(h), conspiracy to launder money (Count Two). (ECF No. 457-1.)

Prior to the plea hearing, the movant sent two letters to his counsel, Lawrence Arnkoff. On August 4, 2012, the movant wrote to Mr. Arnkoff telling him that "people used to tell me all the time that I am lucky. I just feel like trying my luck and I want you as my attorney to go along with me." (Case No. 3:17-cv-1019, ECF No. 17 at Page ID# 97.) Several months later, on October 28, 2012, the movant wrote to Mr. Arnkoff stating, "I want to plead guilty in a manner that you can argue about quantity, leader role, everything on final sentencing." (Id. at Page ID# 93.)

On November 5, 2012, the movant entered into a plea agreement with the United States under the provisions of Fed. R. Crim. P. 11, and, in conjunction therewith, submitted to the court a petition to enter a guilty plea to Counts One and Two of the superseding indictment, which the court accepted. (ECF No. 472.) In the plea agreement, the movant admitted to the facts underlying the charges in the superseding indictment and agreed that the facts established his guilt beyond a reasonable doubt. (*Id.* at Page ID## 2133-37.) He also acknowledged that he had read the plea agreement, he had reviewed it with his attorney, he understood his rights with respect to the superseding indictment, he understood the penalties associated with the crimes to which he was pleading guilty and the applicable sentencing guidelines. (ECF No. 472 at Page ID# 2147.) He also acknowledged that he voluntarily agreed to enter the plea agreement. (*Id.*)

At the plea hearing, the movant testified that he read the recitation of facts set forth in the plea agreement and that the facts stated therein were true. (ECF No. 1125 at Page ID# 7193.) He also testified that the facts were accurate and that he had nothing to add. (*Id.*) Additionally, the movant acknowledged that he understood the penalties associated with the charges to which

he had agreed to plead guilty. (*Id.* at Page ID# 7182-85, 7187-89.) The movant testified that he understood the terms of the plea agreement, that he had gone over the plea petition and plea agreement with his attorney and that there was not any part of either the plea petition or plea agreement that he did not understand. (*Id.* at Page ID# 7190-91.) The movant testified that he had no questions about any part of the plea petition or plea agreement and that he understood the rights he was giving up in entering the plea agreement. (*Id.* at Page ID## 7183-86, 7191.) The movant also testified that his lawyer was not making him waive his rights and plead guilty, that the decision to do so was his own decision, and that he made the decision freely with the benefit of his lawyer's advice. (*Id.* at Page ID# 7193.)

After the plea agreement was accepted by the court, a presentence report was prepared. The movant's presentence report calculated his final adjusted offence level at 43 and his Criminal History Category at Category 1, which placed the movant's guideline range at life imprisonment. (ECF 1137 at Page ID## 7305-06.)

Although the movant accepted the government's plea agreement, he did not accept the government's offer regarding sentencing. The movant alleges that "a month before sentencing [he] received a message to call his counsel and was informed about the offer of 180 months which was given by the government on [the] condition [that the movant's] counsel will not argue or ask [for] anything less than that on sentencing." (ECF No. 1 at Page ID# 4.) The movant alleges that he asked Mr. Arnkoff, to "see if you can get 168 months," but learned that the government was unwilling to agree to a sentence less than 180 months. (*Id.*) The movant alleges that, when he asked Mr. Arnkoff what he should do, Mr. Arnkoff suggested that the movant "gamble." (*Id.*) The movant alleges that Mr. Arnkoff told the movant that he would argue that the movant should be sentenced to 144 months, that the government would seek 216

3

months, and that "most likely [the] judge will meet us in the middle and sentence you to 180 months." (*Id.*)

On December 4, 2015, the court held a sentencing hearing. Prior to the hearing, the government filed a Motion for Downward Departure, as it had agreed to do, and requested that the court impose a 216-month sentence. (*Id.* at Page ID## 7308-09.) At sentencing, the court agreed that a downward departure was appropriate. (*Id.* at 7310.) As such, the argument at the hearing focused on determining the appropriate sentence for the movant. At the conclusion of the hearing, the movant was sentenced to a 216-month term of imprisonment. (ECF No. 1137 at Page ID# 7329.) Judgment was entered on November 20, 2015. (ECF No. 43.)

## II. THE CURRENT MOTION

The movant asserts three ineffective assistance of counsel claims: (1) that trial counsel was ineffective for failing to encourage him to accept the government's offer to request a sentence of 180 months if the movant's counsel requested the same sentence; (2) that trial counsel was ineffective for failing to advise the movant that pleading to the money laundering count would increase his offense level by 2 levels under U.S.S.G § 2S1.1(b)(2)(B) and (3) that trial counsel was ineffective for failing to object to the 2-level enhancement for possession of a firearm under U.S.S.B. § 2D1.1(b)(1). In its response, the government argues that the movant's counsel's performance was not deficient, and, even if it was, the movant has not established prejudice. In his reply, the movant reargues his claims.

## III. STANDARD OF REVIEW

Federal prisoners must file any motion to vacate within one year of the date on which: (1) the judgment of conviction becomes final; (2) a governmental impediment to making the motion is removed; (3) a right was initially recognized by the Supreme Court, if that right was newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the facts supporting the claim could have been discovered with due diligence. 28 U.S.C. § 2255(f)(1)–(4). To prevail upon a motion for habeas relief under 28 U.S.C. § 2255, prisoners must allege that: (1) their conviction resulted from an error of constitutional magnitude; (2) their sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *see also Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). Prisoners must sustain their allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *United States v. Campbell*, 224 F.Sup. 549, 553 (E.D. Ky. 2016).

The court should hold an evidentiary hearing in a Section 2255 proceeding where a factual dispute arises, unless the petitioner's allegations "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013)(quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). In addition, no hearing is required where "the record conclusively shows that the petitioner is entitled to no relief." *Arredondo*, 178 F.3d at 782 (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). *See also Fifer v. United States*, 660 F.App'x. 358, 359 (6th Cir. Aug. 22, 2016).

Having reviewed the pleadings, briefs and records filed in the movant's underlying criminal case, as well as the pleadings, briefs and records filed in this case, the court finds that it need not hold an evidentiary hearing in this case to resolve the movant's claims. The record conclusively establishes that the movant is not entitled to relief on his claims for the reasons set forth herein.

## IV. DISCUSSION

### A. Ineffective Assistance of Counsel: Legal Standard

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

#### 1. Rejection of Government Offer

The movant argues that his trial counsel, Lawrence Arnkoff, should have encouraged him to accept the government's offer to recommend a 180-month sentence and should not have suggested that he "gamble" on obtaining a shorter sentence. In support of this argument, the movant cites to a letter written by Mr. Arnkoff on February 20, 2016, that states, in pertinent part:

> I was upset for weeks that I was not able to convince the Judge to give you a lesser sentence. After he sentenced [two of the movant's co-defendants, one who received a life sentence and one who received a 20-year sentence], it became more apparent that my perspective was generated more by hope than by reality.

6

(Case No. 3:17-cv-1019, ECF No. 1 at Page ID# 26.) The movant suggests that the statement "my perspective was generated more by hope than by reality" amounts to an admission by Mr. Arnkoff that he told the movant to gamble on getting a better sentence than the government was offering. However, nothing in Mr. Arnkoff's statement establishes that he encouraged the movant to gamble at sentencing. Rather, it suggests only that Mr. Arnkoff's perspective on the movant's chances of obtaining a sentence less than 180 months was based more on hope than reality. Mr. Arnkoff's statement sheds no light on the movant's argument that it was Mr. Arnkoff who suggested that the movant "gamble" and reject the government's offer of a 180-month sentence. What is more, in an affidavit attached to the government's response, Mr. Arnkoff, declares, in pertinent part, that:

> I believe a week or two prior to the sentencing hearing AUSA Brent Hannafan agreed to make a sentencing recommendation to the Court for a 15-year sentence. If Mr. Syed rejected the offer Mr. Hannafan was going to ask the Court to impose an 18-year sentence. I recall going to see Mr. Syed to discuss the offer because it was a significant matter. I explained all the ramifications of the offer very carefully to him. Mr. Syed was upset that other defendants in the case were getting considerably less time. I always cautioned him that they had cooperated from the outset, they did not have as much of a leadership role in the organization, and most importantly they never obstructed justice by threatening to harm the informant. I advised Mr. Syed if he wanted me to argue for a sentence less than 15 years we had a right under the plea agreement to do so. He seemed to be fixated on receiving a sentence in the 10-12 year range. He very clearly told me he wanted to gamble on getting a sentence lower than 15 years. I did not encourage his decision and I reiterated the Court could impose a sentence of less than 15 years, a sentence of 18 years as recommended by the Government or the Judge could impose a sentence greater than 18 years. He alone chose to reject the sentencing recommendation. In retrospect I am not sure the recommendation would have mattered to Judge Haynes because the Government recommended a 15-year sentence for [a] co- defendant . . . and Judge Haynes imposed a sentence of 20 years.

(*Id.* ECF No. 10-1 at Page ID# 55.) The court credits Mr. Arnkoff's version of events in light of the letters the movant sent to Mr. Arnkoff on August 4, 2012 and October 28, 2012 in which the

7

movant explained to Mr. Arnkoff that, he had always been told that he was lucky and that he felt "like trying [his] luck and I want you as my attorney to go along with me," (Case No. 3:17-cv-1019, ECF No. 17 at Page ID# 97) and that he wanted to "plead guilty in a manner that you can argue about quantity, leader role, everything on final sentencing" (*Id.* at Page ID# 93.) While the letters were sent around the time of the plea hearing, they evidence the movant's approach to his case—that he wanted to try his luck. Additionally, the only way that Mr. Arnkoff could argue about quantity, leader role and "everything" on final sentencing, was if the movant did not accept the government's offer of a 180-month sentence recommendation in exchange for the movant not arguing for a lighter sentence-for example, by arguing that there was insufficient evidence to substantiate the quantity of drugs or that the movant was not a leader. As such, the court finds that counsel did not advise the movant to reject the government's offer and "gamble" on obtaining a lighter sentence.

However, even if Mr. Arnkoff had been deficient in encouraging the movant to reject the 180-month offer, the movant has not established that he was prejudiced by Mr. Arnkoff's allegedly deficient assistance. Where, as here, the movant alleges that trial counsel's ineffective assistance led him to reject the government's offer of a lower sentence than was imposed by the court, "the *Strickland* prejudice test requires a defendant to show a reasonable possibility that the outcome of the plea process would have been different with competent advice. *Miller v. United States*, 561 F.App'x. 485, 495-96 (2014).

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

8

*Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012).

The movant has not offered any evidence to suggest that he would have accepted the government's offer. Nor does he state that he would have accepted the government's offer anywhere in his briefing.[2] Moreover, even if the movant had accepted the government's offer, the movant has failed to offer any evidence that the court would have accepted the 180-month sentence. As was made plain during the sentencing hearing, the court believed that the movant's culpability was significant and was not comparable to the culpability of other co-defendants. The court noted that, unlike some of his co-defendants who obtained lighter sentences, the movant did not "just engage[ ] in drugs." (ECF No. 1137 at Page ID# 7321.) Additionally, the court noted that those other defendants' sentences reflected the fact that they were "not talking about trying to kill somebody." (*Id.* at 7318.) Further, the court stated:

> [T]his is a very serious matter. This was a defendant who was, essentially, the leader of the Middle Tennessee drug conspiracy. There were hundreds of kilos of drugs that were being transported through the Middle District and elsewhere. There was a significant money laundering scheme in connection with this. On top of that there were threats to kill two witnesses, two critical witnesses in this case. In addition, the Court is disturbed that, even the defendant acknowledges that the government warned him about the discussion and threats about one witness, but the discussion continued and, in fact, involved a second witness.

(ECF No. 1137 at Page ID# 7328.) Moreover, in rejecting counsel's argument that the movant should be sentenced to 10 to 12 years, a sentence closer to those of some of the movant's co-defendants, the court stated: "[I]t really wouldn't reflect what he did." (*Id.* at Page ID# 7321.) As such, the evidence before the court contradicts the movant's argument that, if his counsel had advised him to accept the 180-month sentence, the court would also have accepted it.

Accordingly, even if counsel had recommended that the movant reject the government's offer to recommend a 180-month sentence, the movant has not established that he was

---

[2] Indeed, even in his briefing, the movant argues that, if everything had gone his way, he would have been sentenced to 162 months. (Case No. 3:17-cv-1019, ECF No. 1 at Page ID# 11.)

prejudiced. Consequently, the movant has not established that he is entitled to relief.[3]

  2.  Failure to Investigate and Inform on Money Laundering Enhancement

The movant argues that Mr. Arnkoff was ineffective for failing to explain to him that pleading to the money laundering charge would result in a 2-level sentencing enhancement under U.S.S.G. Section 2S1.1(b)(2)(B). The government argues that, even if Mr. Arnkoff were deficient, the movant was not prejudiced.

As noted above, to establish ineffective assistance of counsel, the movant must demonstrate that counsel was deficient and that counsel's deficiency was prejudicial. *Strickland*, 466 U.S. at 687-88. To show prejudice, the movant must establish that the outcome of the plea process would have been different with competent advice. *See Miller*, 561 F.App'x. at 495-96.

In his declaration, Mr. Arnkoff explains:

> Regarding Mr. Syed's claim he was not advised his guideline range would be impacted by his guilty plea to the money laundering count I would say he has a faulty recollection of events. Prior to the plea I went over the plea agreement with him at length and explained the Government was requiring he plead to the money laundering count as well as the conspiracy count in the Indictment. Based on my experience, my research and my review of the significant amount of discovery provided by the Government, I was convinced the government could meet its burden at a trial of proving Mr. Syed guilty of the offense. When reviewing the PSR with Mr. Syed in preparation for sentencing I went over each page of the PSR with him line-by-line and word-by-word. Judge Haynes always demanded defense counsel conduct themselves in that manner and when Mr. Syed was asked that question at sentencing he responded to the Judge he has gone over the PSR with me in that manner. The PSR clearly reflected a 2 level increase and I explained that to Mr. Syed. Since Mr. Syed's guideline range was still at life with or without the money laundering conviction I did not feel it was an issue that required an inordinate amount of discussion.

(Case No. 3:17-cv-1019, ECF No. 10-1 at Page ID# 56.) Given the movant's statements at this

---

[3] It bears noting that, even where the government recommended a specific sentence, the court was not likely to accept the recommendation if it did not believe that the sentence reflected the defendant's behavior. For example, as Mr. Arnkoff notes in his declaration, the government recommended that the movant's co-defendant, Juana Villareal, receive a 15-year sentence, but the court imposed a 20-year sentence. (Case No. 3:17-cv-1019, ECF No. 10-1 at Page ID# 56.)

change of plea hearing, which support Mr. Arnkoff's version of events, the court finds that counsel did not fail to advise him that he would be subject to a 2-level enhancement for pleading guilty to money laundering. Nevertheless, even assuming that counsel's performance was ineffective, the movant must, but has failed to, establish prejudice.

The movant argues that his base offense level of 36 was increased 2 points for obstruction of justice, 2 points for a firearm enhancement, 2 points for money laundering and 4 points for having a leadership role in the crime, resulting in an offense level of 46 points. The movant argues that, if he had not pleaded guilty to the money laundering charge, his offense level would have been 41, after taking off the 2-level enhancement for money laundering and including the 3-point reduction for acceptance of responsibility. The movant notes that an offense level of 41 results in a guidelines range of 324-405 months, rather than the life sentence that the movant faced. From this fact, the movant than argues that the court would likely have used the bottom of the sentencing range, 324 months, as a baseline and from that baseline would have reduced his sentence to 162 months in connection with the government's request for a downward departure. The movant's argument is based entirely on conjecture about what the government might have done and what the court might have done, if he had not pleaded guilty to the money laundering charge. Such conjecture does not establish prejudice.

First, and most importantly, nowhere does the movant suggest that, if he had known that the money laundering charge would have resulted in a 2-level enhancement, he would have rejected the plea offer and insisted on going to trial. *See Hill,* 474 U.S. at 59. (noting that, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") On this basis alone, the movant's claim of ineffective assistance of

counsel must be rejected.

Second, there is no evidence to suggest that the plea process would have moved forward unchanged, if the movant had not pleaded guilty to the money laundering charge, a basic assumption of the movant's argument. In his Motion, the movant notes that he was aware that the plea agreement was grounded, at least in part, on his guilty plea to the money laundering charge. The movant explains that, if he pleaded guilty to the money laundering charge, the government could then charge married co-defendants Villareal and Vela-Salinas with money laundering, something the movant notes the government could not have done without the movant's plea. Under these circumstances, without the movant's plea to money laundering, it is likely that the plea process would have stopped in its tracks, or at minimum, any plea agreement would have been rather different than the plea agreement that the parties eventually entered into. Moreover, the evidence attached to the Motion also suggests that, without the movant's plea to money laundering, there would have been no plea agreement. *See* Case No. 3:17-cv-1019, ECF No. 1 at Page ID# 19 (Assistant United States Attorney Hanafan stating, "I planned (and still plan) to seek a superseding indictment which will charge [the movant] with money laundering. As we discussed, I would expect he will plead to that count as well as part of our agreement."); *see also id.* at Page ID# 20 (AUSA Hanafan explaining that, "[b]ased on our discussions and my expectation that he would plead to the pending conspiracy charge and impending money laundering charge, I had not planned to seek any additional charges against Mr. Syed.")

Third, while "[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available" *Smith v. United States*, 348 F.3d 545, 553, an erroneous sentencing guideline prediction does not, by itself, justify setting aside a guilty plea, *United States v. Hicks*,

4 F.3d 1358, 1363 n.3 (6th Cir. 1993) (citing *United States v. Stephens*, 906 F.2d 251, 254 (6th Cit. 1990)).) For example, in *Thompson v. United States*, the Sixth Circuit held that the deistrict court erred in not holding an evidentiary hearing regarding the movant's ineffective-assistance-in-plea-negotiations claim, where counsel failed to advise the movant that a dispute regarding shots fired during a police chase could result in a significant enhancement of the movant's guideline estimate.[4] *Thompson*, No. 16-6531, 2018 WL 1517190, at *4 (6th Cir. Mar. 28, 2018). By contrast, in *Moore v. United States*, 676 F.App'x 383, 385-87 (6th Cir. Jan. 13, 2017), the court held that the movant had failed to establish prejudice where he alleged that counsel failed to accurately inform him of his minimum and maximum sentence, which were 5 and 40 years, instead of 10 years and life as counsel had advised the movant. *Id.* The court found that counsel was not ineffective where there was no reason to believe that the movant would have rejected the plea offer of 140 months, if the movant had known that his sentencing exposure was 40 years instead of life. *Id.* at 386. Here, the movant complains that his counsel failed to give him fully accurate sentencing information, but like in *Moore*, the information allegedly omitted had no meaningful impact on the reasonableness of his decision to plead guilty.

Moreover, at both the plea and sentencing hearing, the court explained the guideline

---

[4] The Sixth Circuit noted that:

> McAfee [the movant's counsel] failed to recognize the extent to which the potential adjustment for shots fired at an officer could result in a substantial offense-level increase. In addition, although McAfee advised Thompson that he could face a longer sentence if he engaged in a credibility contest with the pursuing officer over how he aimed the rifle when the shots were fired, he did not anticipate the loss of credit for acceptance of responsibility. Further, McAfee erroneously estimated that Thompson's past misconduct placed him in criminal history category I rather than III. These three errors substantially account for the difference between the estimated guidelines range and the range arrived at by the district court.

*Thompson*, 2018 WL 1517190, at *4, n.3.

range to which the movant was subject. At sentencing, the following colloquy took place:

> COURT: Did you receive the Pre-Sentence Report prepared on May 9, 2013, and revised on September 21 of 2015, the document I'm holding up?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you go over this document with your lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Page for page?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Line for line?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: After doing that, is there any part of this document you do not understand?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Any part of this document you have any questions about?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Any part of this document that you feel you need the Court to explain any further?
>
> THE DEFENDANT: No, sir.

(ECF No. 1137 at Page ID## 7304-05.) The above colloquy establishes that the movant had received and gone over the PSIR with his counsel (as counsel stated in his declaration) and knew at that time that his guideline range included a 2-level enhancement for money laundering and would result in a maximum sentence of life. Additionally, the movant was repeatedly advised by his counsel that the court, and not the guidelines, would ultimately decide the movant's sentence. (*See* Case No. 17-cv-1019, ECF No. 1 at Page ID #21 (letter from counsel advising the movant, "to stop worrying about your guidelines. They are what they are but they are not mandatory.

We are going to show Judge Haynes they are significantly overstated in your case"); *Id.* at Page ID# 25 (letter from counsel advising that "the Judge still has the ability to give you a sentence below the statutory mandatory minimums").

Finally, it is worth noting that, even if the movant had not been subject to the 2-level enhancement for money laundering, and had fallen within the guideline range that he argues would have applied to him—324-405 months—the movant was sentenced significantly below that range.

Based on the foregoing the movant has failed to establish his entitlement to relief.

### 3. Failure to Object to Firearm Enhancement

The movant argues that Mr. Arnkoff failed to argue at the sentencing hearing that there were insufficient facts to support a 2-level firearm enhancement. Specifically, the movant argues that his sentence would have been significantly lower without the firearm enhancement and that the evidence did not support such an enhancement, so his counsel should have argued at sentencing that the firearm enhancement was improper.

In his declaration, Mr. Arnkoff states:

> Mr. Syed's claim that I mistakenly failed to object to the 2 level firearm enhancement in the PSR is not supported by the evidence in this case. As previously mentioned I went over the PSR with him and addressed every issue including the firearm issues. I explained to him that the wiretaps revealed conversations between Mr. Syed and co-defendants about firearms; he was carrying a firearm when he was arrested, and I believe there was video surveillance that also confirmed firearm possession. Mr. Syed had difficulty comprehending that having a permit to carry a firearm did not exculpate him from this enhancement. The state of facts in the plea agreement, which the Probation Department relies on in preparing the PSR, clearly mentions the wiretap conversations with co-defendant about firearms. Mr. Syed heard the statement of facts presented at his change of plea hearing and when asked by Judge Haynes if they were true and accurate he responded that they were.

(Case No. 3:17-cv-1019, ECF No. 10-1 at Page ID# 56.) The movant fails to offer any evidence

to contradict Mr. Arnkoff's declaration. Moreover, the movant does not suggest that he would have rejected the plea agreement and would have insisted on going to trial if he had known that there were insufficient facts to support the firearm enhancement. *Hill*, 474 U.S. at 59.

Even if Mr. Arnkoff failed to fully investigate the firearm enhancement before recommending that the movant accept the enhancement as part of the plea agreement, the movant did not object to, and affirmatively adopted, the Government's recitation of facts contained in the plea agreement that established the firearm enhancement. He agreed that the facts set forth in the plea agreement were true and accurate and that he had nothing to add. (ECF No. 1125 at Page ID## 7190-93)[5] Having admitted in open court that the facts underlying his conviction were true and accurate, the movant cannot now repudiate these admissions. *See Brady v. United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 1474, 25 L. Ed. 2d 747 (1970) (holding that "[w]e find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought. . . .") As such, Mr. Arnkoff cannot have been deficient for failing to argue at the plea hearing that there was an insufficient factual basis for the firearm enhancement.

## V. CONCLUSION

For the reasons set forth herein, the § 2255 motion will be denied. An appropriate order will enter.

ENTER this 22nd day of May 2018.

ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE

---

[5] The court does not quote from the plea hearing because the transcript to that hearing remains under seal.